NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LM INSURANCE CORP et al,<br><br>Plaintiffs,<br><br>v.<br><br>ALL-PLY ROOFING CO., INC.,<br><br>Defendant. | Civil Action No. 14-cv-04723<br><br><br>OPINION |

JOSE L. LINARES, U.S.D.J.

This matter comes before the Court upon motion by Plaintiffs, LM Insurance Corporation and Liberty Insurance Corporation (hereinafter "Plaintiffs") to dismiss the counterclaims of Defendant, All-Ply Roofing Co., Inc., (the "Motion to Dismiss"). (ECF No. 12). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the Parties' submissions, and for the reasons stated below, Plaintiffs' Motion to Dismiss, (ECF No. 12), is **granted in part and denied in part**.

**I. BACKGROUND**[1]

By way of background, the New Jersey Compensation Rating and Inspection Bureau establishes an experience modification for every workers' compensation policy issued as an assigned risk in the state, based upon the insured's previous losses. *Travelers Indem. Co. v. Kenvil*

---

[1] The facts are taken primarily from Defendant's Answer and Counterclaim, (ECF No. 10), and are properly accepted as true for the purposes of this Opinion.

1

*Steel Products, Inc.*, 2009 WL 170087, at *1 (N.J. Super. Ct. App. Div. Jan. 27, 2009). The workers' compensation policy is initially issued with an estimated premium based on the insured's evaluation of their anticipated payroll with this premium being paid at the inception of the policy term. *Id.* At the conclusion of the policy term, an audit is conducted of the insured's books and records to determine the actual payroll and the proper classification for that payroll so that the actual premium can be determined. *Id.* If the actual payroll is more than the estimated premium, the additional amounts owed to the insurance company is called the earned premium and are billed to the insured. *Id.* As further detailed below, this process provides the basis for Defendant's Counterclaim.

**A. Pertinent Facts**

Plaintiffs bring this action against Defendant/Counter-Plaintiff, All-Ply Roofing Co., Inc., (hereinafter "Defendant") for alleged premiums owed under specific workers' compensation insurance issued by Plaintiffs. Plaintiffs further allege that Defendant failed to provide full, complete and truthful disclosures of its operations, remuneration, and exposures, including amounts actually reported on audit to the New York Insurance Fund (hereinafter "NYIF"). Specifically, Plaintiffs allege that these policies provided for premiums to be determined according to the work classifications of Defendant's employees and that Defendant misrepresented to Plaintiffs the "true nature" of the work being performed by many employees in order to shift the payroll from Roofing, a higher rated classification, to lower rated classifications such as Sheet Metal Works and Executive Supervisor. (Complaint, ECF No. 1, ¶¶ 15, 29). Apparently, by 2012, Plaintiffs became aware that Defendant had also reported, on audits, substantially less payroll to the NYIF that it had previously indicated to Plaintiffs that it had. (Id. ¶23). Thus, by representing

to Plaintiffs that certain payrolls were "covered" by the NYIF policies, without actually reporting the payroll to the NYIF, Plaintiffs sought to have the benefits of workers' compensation coverage without paying the corresponding premiums. (Id. ¶24).

**B. Defendant's Counterclaim**

Defendant was incorporated in 1989 to furnish and install roof and sheet metal systems to the general public. (Counterclaim, ECF No. 9, ¶2). Defendant predominantly performs public jobs and has Collective Bargaining Agreements with locals 25, 28 and 38 for hiring sheet metal workers. (Id. ¶¶7-8). These workers fabricate and install metal ceilings, wall panels, siding soffits and store fronts. (Id. ¶9). Defendant is insured on projects within the State of New Jersey by the Plaintiffs in this case where Defendant's workers' compensation insurance certificates are further endorsed "NY coverage provided by the state fund." (Id. ¶11). A NY worker's compensation claim was made in 2011 by an employee who later settled the claim after NYIF confirmed coverage. (Id. ¶14). Plaintiff apparently paid nothing on the claim, but is suing Defendant for premiums due.

The crux of Defendant's Counterclaim rests on Plaintiffs' re-audit of the code classifications that it had approved beginning in 2005. (Id. ¶34). That is, Plaintiffs' auditor reclassified Defendant's entire workforce as Roofers, provided for no standard exceptions for Executive Sales of Executive Supervisors and only allowed one (1) clerical employee. (Id. ¶36). Defendant purports that the re-audit purposely mischaracterized and completely ignored the business practices and operations of the Plaintiffs and Defendant. Essentially, Defendant's Counterclaim alleges that after Plaintiffs concluded that Defendant was underpaying its premiums

3

as a result of its New York jobs, Plaintiffs retaliated by maliciously and recklessly reclassifying all of Defendant's employees as "roofers" and therefore applying the highest premium rating.

As a result, Defendant brings four causes of action against Plaintiff in this case which are: 1) breach of implied covenant of good faith and fair dealing; 2) breach of contract; 3) equitable estoppel; and 4) negligent misrepresentation. (*See* ECF No. 9). More specifically, as to Defendant's cause of action for breach of implied covenant of good faith and fair dealing, Defendant states that Plaintiff abandoned good faith auditing practices and the accepted workers' compensation classification codes, disregarding the course of Defendant's business and performance. (Id. ¶¶61, 64). As to Defendant's cause of action for breach of contract, Defendant states that an insurer it is required to meet the reasonable expectations of its policyholder, and must give as much consideration to the financial interest of its insured as to its own financial interests. (Id. ¶74). However, according to Defendant, and taken as true for purposes of this Opinion, Plaintiff willfully and without cause reclassified all of All-Ply's employees to the highest classification. (Id. ¶75).

Regarding equitable estoppel, Defendant first proffers that Plaintiffs consistently represented to All-Ply that the traditional and appropriate workers' compensation codes would be followed. (Id. ¶79). Defendant further alleges that, in reliance on such representations, Defendant gave Plaintiffs its workers' compensation insurance business but instead of applying the workers' compensation classification codes used in the parties' longstanding course of business, Plaintiffs reclassified all of Defendants' employees as roofers. (Id. ¶87). As a result of the reaudit and in addition to the $116,000.000 deposit paid by Defendant, Plaintiff is overcharging Defendant by $445,000.00. (Id. ¶84). And lastly, Defendant brings a cause of action for negligent misrepresentation, claiming Plaintiffs' false statements that the workers' compensation

4

classification codes previously applied would continue to be applied, but then did not, imposed a drastic and unjustified premium increase on Defendant. (Def. Opp., ECF No. 20 at 6-7).

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III. DISCUSSION

As previously indicated, by and through its Counterclaim, Defendant brings four causes of action against Plaintiff including breach of implied covenant of good faith and fair dealing, breach of contract, equitable estoppel, and negligent misrepresentation. (*See* ECF No. 9). Plaintiffs challenge Defendant's Counterclaim first by arguing there are no recognizable bad faith claims in New Jersey for audit or premium disputes but rather "bad faith" claims against insurers in New Jersey are limited to claims handling issues. Next, Plaintiffs contest Defendant's requests for relief, stating that attorney's fees and punitive damages are not permissible forms of relief given the claims and facts plead within the Counterclaim. Lastly, Plaintiffs challenge whether Defendant

has plead sufficient facts to establish the essential elements of its breach of contract claim, equitable estoppel claim, and "duty" element of Defendant's negligent misrepresentation claim. The Court takes each of Plaintiffs' arguments relevant to this Motion to Dismiss in turn.

### A. Bad Faith

Defendant's Counterclaim states a cause of action for breach of implied covenant of good faith and fair dealing against Plaintiff. This is premised on Plaintiffs' auditor re-classifying all of Defendant's employees as roofers in retaliation for Defendant under-reporting its payroll. (Counterclaim, ¶¶60-62). Plaintiffs argue that because Defendant seeks to establish a bad faith claim premised upon a premium estimate and subsequent adjustment, a cause of action not recognized in New Jersey, this claim must be dismissed. Specifically, Plaintiffs state that New Jersey law limits "bad faith" claims against insurers to claims handling without affording a viable bad faith action with respect to premium disputes. (Pls.' Br., ECF No. 12-1 at 6). However, Plaintiffs fail to point the Court to binding authority stating this.

New Jersey courts imply a duty of good faith and fair dealing in all contracts. *Paul Revere Life Ins. Co. v. Pataniak*, 2004 U.S. Dist. LEXIS 7669, at *6 (D.N.J.2004). "[W]hen a breach of the duty of good faith and fair dealing can be shown, liability may be had in tort as well as in contract under New Jersey common law. *Id.* at *7. An insurer's obligation to exercise good faith "depend[s] upon the circumstances of the particular case." *American Home Assurance Co., Inc. v. Hermann's Warehouse Corp.* at 7, 563 A.2d 444. "The boundaries of 'good faith' will become compressed in favor of the insured depending on those circumstances" presented. *Bowers v. Camden Fire Ins. Ass'n*, 51 N.J. 62, 71, 237 A.2d 857 (1968)). "[I]n New Jersey the covenant of good faith and fair dealing is contained in all contracts and mandates that 'neither party shall do

6

anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Seidenberg v. Summit Bank*, 348 N.J.Super. 243, 254 (App.Div.2002) (quoting *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997)).

Defendant's Counterclaim states that Plaintiffs' policy contracts imply that it would deal fairly with Defendant and perform its obligation under the contract in good faith. (Counterclaim, ¶68). It also explains that Plaintiffs' auditor elected to maliciously disregard Defendant's course of business and performance while exhibiting egregious and outrageous misconduct when Defendant attempted to have the classification revised, by claiming every employee of Defendant was classified as a "roofer." (Id. ¶¶61-63). In essence, the Counterclaim states sufficient facts to claim Plaintiff consciously manipulated Defendant's premium obligations so as to punish Defendant for what Plaintiff deemed "under-reporting" of its payroll, while maximizing Plaintiffs' profit at Defendants' expense. This in effect injured the right of Defendant to receive the "fruits" of the contract, and Defendants have stated a claim for breach of the implied covenant of good faith and fair dealing. (quoting *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997).

**B. Attorney's Fees**

Defendant's Counterclaim seeks to recover attorney's fees. Plaintiffs argue that Defendant's demands for legal fees must be dismissed as it has not identified any statute that might entitle it to such an award. Defendant on the other hand, claims that by statute, attorney's fees may be allowed in the taxed costs or otherwise to the successful claimant in an action upon liability or indemnity policy of insurance under N.J. Ct. R. R. 4:42-9(a)(6). (Def. Br., ECF No. 20 at 23).

A federal court sitting in diversity should look to the law of the state in which they sit for guidance regarding attorney's fee awards, providing that the state law does not run counter to a federal statute or rule of court. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240,

7

259 n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (quoting 6 J. Moore, Federal Practice ¶ 54.77(2), pp. 1712–1713 (2d ed.1974)). New Jersey follows the American Rule, under which "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys fee from the loser." *Guarantee Ins. Co. v. Saltman,* 217 N.J.Super. 604, 609, 526 A.2d 731 (App.Div.1987). There are three exceptions to the general rule against recovery of attorney's fees: (1) "where counsel fees are permitted by court rule or statute"; (2) "pursuant to a contract"; (3) "or where counsel fees are a traditional element of damages in a particular cause of action." *Guarantee Ins.,* 217 N.J.Super. at 610, 526 A.2d 731.

Defendant points this Court only to N.J. Ct. R. 4:42–9(a)(6) for its demand for attorneys fees. Under New Jersey Court Rule 4:42–9(a)(6), counsel fees are allowed "in an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." N.J. Ct. R. 4:42–9(a)(6). Therefore, New Jersey courts have held that "[s]ince the intention of the Rule is to permit an award of counsel fees only where an insurer refuses to indemnify or defend its insured's third-party liability to another, generally, it is not extended to permit counsel fees to its insured on a direct suit against the insurer to enforce … first-party direct coverage." *Guarantee Ins.,* 217 N.J.Super. 604, 610–11, 526 A.2d 731 (emphasis added); *see also Shore Orthopaedic Grp., LLC v. Equitable Life Assur. Soc. of U.S.,* 397 N.J.Super. 614, 624, 938 A.2d 962 (App.Div.2008) (affirming rejection of claim for counsel fees under Rule 4:42–9(a)(6) because the Rule "does not pertain to first party claims"). This Rule, therefore, does not permit the imposition of attorney's fees as a form of relief in a first party claim such as this. Defendant has provided no other grounds of express statutory authorization, an agreement, or an established exception under which they could receive counsel fees. Accordingly, Defendant's demand for attorney's fees must be dismissed.

## C. Punitive Damages

Punitive damages are governed by statute in New Jersey. In order to recover punitive damages, a plaintiff must demonstrate, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and that such acts or omissions were actuated by actual malice, or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. *E.g., Vibra Tech Engineers, Inc. v. Kavalek*, 849 F. Supp. 2d 462 (D.N.J. 2012), *appeal dismissed* (Aug. 21, 2012). Punitive damages may be recovered against an insurer upon a showing that the insurer's conduct was wantonly reckless or malicious. *See Polizzi Meats, Inc. v. Aetna Life & Casualty Co.*, 931 F. Supp. 328 (D.N.J. 1996). Defendant's Counterclaim clearly alleges malice on the part of the Plaintiffs' auditor when he willfully, without cause and in retaliation, reclassified Defendant's employees to the highest classification. As a result, Defendant suffered financial harm as it relied on the previous classification codes in making project bids, estimates for its customers and for various business costs. (Counterclaim, ¶76). Such suffices to state a claim for recovery of punitive damages.[2]

## D. Breach of Contract

In order to succeed on a breach of contract claim, a plaintiff must show that (1) a valid contract exists, (2) the defendant materially breached the contract, and (3) the plaintiff suffered

---

[2] However, according to New Jersey law, punitive damages are not available for breach of contract claims. *Thomas v. Northeastern Univ.*, 2011 WL 3205301, at *2 (D.N.J. July 27, 2011). Therefore, to the extent Defendant's claims for punitive damages resonates from its breach of contract claim and breach of implied covenant of good faith and fair dealing only, such claim for punitive damages shall be dismissed.

damages as a result of the breach. *Vukovich v. Haifa, Inc.*, 2007 U.S. Dist. LEXIS 13344, at *13, 2007 WL 655597 (D.N.J. Feb. 27, 2007). A valid contract exists when there is "mutual assent, consideration, legality of the object of the contract, capacity of the parties, and formulation of memorialization." *Id.* at * 14. Plaintiffs and Defendant entered into workmen's compensation policy insurance agreements. (Counterclaim, ¶73). Defendant alleges Plaintiffs breached this contract by failing to "meet the reasonable expectations of its policyholder" and reclassifying all employees as roofers. (Counterclaim, ¶74). However, it is unclear exactly which specific provisions of the contract Defendant claims Plaintiffs breached. Defendant only broadly asserts that its expectations were not met but fails to identify the contractual provisions at issue. Therefore, as the "breach" element of this claim is not adequately plead, Defendant may not proceed with its breach of contract counterclaim without additional specificity.

### E. Equitable Estoppel

To state a claim under the doctrine of equitable estoppel, a plaintiff must allege (1) a misrepresentation of material fact, known to the party sought to be estopped but unknown to the other, (2) made with the intention or expectation that it will be relied upon, (3) and upon which the Defendant/Counter-Plaintiff reasonably relied, (4) to its detriment. *Quigley, Inc. v. Miller Family Farms*, 266 N.J.Super. 283, 296, 629 A.2d 110 (App.Div.1993). Essentially, to satisfy this standard, Defendant alleges that: 1) Plaintiffs materially misrepresented to it that the quoted and estimated workmen's compensation classification codes would be followed; 2) Plaintiffs did this with the expectation that Defendant would rely on the misrepresentation; 3) that these representations were in fact relied upon by Defendant; and 4) Defendant's detriment is represented by the increase in charges the "prejudicial re-audit" caused. (Counterclaim, ¶¶79-80, 90-91). Such suffices to state a claim under the doctrine of equitable estoppel at this juncture.

### F. Negligent Misrepresentation

To establish this claim, a party must show "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F.Supp.2d 366, 370 (D.N.J.2006) (quotations omitted). "The plaintiff must also demonstrate that he sustained an injury proximately caused by the defendant's statements." *Id.* A plaintiff must further allege that the defendant owed him a duty of care. *Kronfeld v. First Jersey Nat. Bank*, 638 F.Supp. 1454, 1465 (D.N.J.1986). "The common law tort of negligent misrepresentation shares all the components of fraud, but includes one additional factor: the misrepresentation must be made by a person with a duty to the plaintiff." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 975 F.Supp. 584, 619 (D.N.J.1996), *rev'd on other grounds*, 133 F.3d 225 (3d Cir.).

Regarding Defendants' negligent misrepresentation claim, Plaintiffs only take issue with whether Defendant has sufficiently plead the "duty" element. While Defendant argues throughout its opposition that Plaintiffs owed a separately duty to Defendant, distinct from their contractual relationship, it is unclear from the face of the Counterclaim, particularly throughout Defendant's Fourth Cause of Action, of an independent duty imposed by law. It is well settled in New Jersey that this claim is barred by the economic loss doctrine without identifying a duty owed independent of the contractual relationship. *See Perkins v. Washington Mutual, FSB*, 655 F.Supp.2d 463, 471 (2009). The economic loss doctrine provides that a tort remedy does not arise from a contractual relationship unless the breaching party owed an independent duty imposed by law. *Saltiel v. GSI Consultants, Inc.* 170 N.J. 297, 316, 788 A.2d 268 (2002); *Perkins*, 655 F.Supp.2d at 471 (finding that the economic loss doctrine barred a negligence claim brought by a plaintiff mortgagor against

11

a defendant mortgagee, because both were parties to the mortgage contract and there was no other duty owed). If a defendant owes a duty of care separate and apart from the contract between the parties, then a tort claim such as negligence may lie. *Saltiel,* 170 N.J. 297 at 314, 788 A.2d 268. However, the mere failure to fulfill obligations encompassed by the parties' contract is not actionable in tort. *Id.* at 316-317, 788 A.2d 268. With this in mind, the Court dismisses Defendant's negligent misrepresentation claim without prejudice.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Dismiss, (ECF No. 12), is **granted in part and denied in part**. An appropriate order accompanies this Opinion.

_____
JOSE L. LINARES, U.S.D.J.

January 22, 2015