**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LM INSURANCE CORPORATION AND LIBERTY INSURANCE CORPORATION, *Plaintiffs*, v. ALL-PLY ROOFING CO., INC. AND JAMES DURANTE, *Defendants*. | Civil Action No. 14-4723 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

The present matter comes before the Court on Defendants All-Ply Roofing Co., Inc. ("All-Ply") and James Durante's (collectively, "Defendants") motion to dismiss the complaint for failure to state a claim. Plaintiffs LM Insurance Corporation and Liberty Insurance Corporation (collectively, "Plaintiffs" or "Liberty") oppose the motion.[1] This case concerns allegations that Defendants engaged in a scheme to fraudulently reduce its workers' compensation premiums. This motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions and grants in part and denies in part Defendants' motion. Defendants' motion is denied as to Counts I, II, III and IV, and granted as to Count V.

---

[1] Defendants' brief in support of its motion to dismiss the amended complaint will be referred to hereinafter as "Def. Br." (D.E. 111); Plaintiffs' opposition to Defendants' motion to dismiss will be referred to "Pl. Opp'n" (D.E. 113); and Defendants' reply brief in further support of its motion will be referred to hereinafter as "Def. R.Br." (D.E. 117).

## I. BACKGROUND[2]

Generally, workers' compensation insurance policies are issued with an estimated premium based on the insured's evaluation of their anticipated payroll, and this premium is paid at the inception of the policy term. *Travelers Indem. Co. v. Kenvil Steel Prods., Inc.*, No. A-2161-07T1, 2009 WL 170087, at *1 (N.J. App. Div. Jan. 27, 2009). At the conclusion of a policy term, an audit is conducted of the insured's books and records to determine the actual payroll and the proper job classification for persons on the payroll so that the correct premium can be determined. *Id.* If the actual payroll is more than the estimated premium, then the insured pays the additional amounts owed to the insurance company. *Id.*

New Jersey has an involuntary market mechanism for employers who may not be able to procure workers' compensation coverage in the voluntary market. This involuntary market mechanism is called the New Jersey Workers Compensation Insurance Plan ("New Jersey Plan").[3] FAC ¶¶ 8, 10. The New Jersey Plan is administered by the New Jersey Compensation Rating and Inspection Bureau ("CRIB"). *Id.* ¶ 10. On or about March 24, 2003, All-Ply submitted an application ("the Application") to CRIB for an insurance company to be designated to provide workers' compensation insurance to it. *Id.* ¶ 11. The Application included an "Employer Certification" executed by James Durante ("Durante"), All-Ply's President, Treasurer, and Chief Financial Officer. *Id.* ¶¶ 4, 12. Durante certified that All-Ply would (1) provide true, correct, and complete information; (2) cooperate fully with the insurance company; and (3) promptly inform

---

[2] The facts are derived from Plaintiffs' First Amended Complaint. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] In the voluntary market, "an employer may purchase workers compensation insurance from any authorized carrier that is willing to underwrite the coverage." *Id.* ¶ 7.

2

the insurance company of any changes during the policy year to the information supplied. *Id.* ¶ 13.

On January 18, 2005, Liberty was assigned by CRIB to provide workers' compensation coverage to All-Ply, effective March 27, 2005. *Id.* ¶ 14. Liberty provided workers' compensation and employers' liability coverage to All-Ply from 2005 until 2014, pursuant to nine yearly insurance policies ("the policies"). *Id.* ¶ 15. Pursuant to the policies, Defendants were required to provide full and complete disclosures of their operations, remuneration, and exposures, including amounts actually reported on audit to the New York State Insurance Fund ("NYSIF"). *Id.* ¶¶ 16, 17. All-Ply agreed to pay an estimated amount, but the policies also provided for audits in order to compute the final, actual premiums. *Id.* ¶ 17. At various times during the coverage periods, All-Ply worked on Owner Controlled Insurance Projects ("OCIP" or "OCIPS"). *Id.* ¶ 22. With an OCIP policy, the owner of the project, rather than All-Ply, provided the workers' compensation insurance coverage. *Id.*

Audits of each of the policies were conducted, and Plaintiffs uncovered allegedly fraudulent activity which forms the basis of this lawsuit. *Id.* ¶¶ 18, 23. Liberty alleges that All-Ply engaged in a fraudulent scheme to reduce its workers' compensation premiums. *Id.* ¶ 23. The scheme consisted of three facets: (1) All-Ply's misrepresentations concerning remuneration reported on OCIPS; (2) All-Ply's misrepresentations concerning remuneration paid to the NYSIF; and (3) All-Ply's misrepresentations concerning the job responsibilities of certain employees so that the employees fell into the higher rated "roofing" classification. *Id.* Each of these misrepresentations, alleges Plaintiffs, resulted in lower premiums than required by the policies. *Id.*

For example, Defendants were able to avoid paying the higher premium for "roofers" by misclassifying certain employees. *Id.* ¶¶ 41-55. Additionally, Plaintiffs allege that Defendants reported substantially less payroll to the NYSIF than they indicated to Plaintiffs. *Id.* ¶¶ 32-40. Defendants reported to Plaintiffs that certain payrolls were "covered" by the NYSIF policies, but did not report the payroll to NYSIF. *Id.* Liberty also alleges that Defendants misrepresented remuneration reported on OCIPS. *Id.* ¶¶ 24-31. By overstating the amount Liberty reported on OCIPS, Plaintiffs did not pay those amounts to Defendants, thereby lowering their premium liability. *Id.* Plaintiffs now seek to recover the premiums allegedly owed to them by Defendants.

## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint on July 29, 2014. D.E. 1. Defendants answered, D.E. 9, and the parties underwent over two years of discovery. On August 4, 2016, Plaintiffs filed their First Amended Complaint ("FAC"), alleging five causes of action: (1) workers' compensation insurance fraud pursuant to N.J.S.A. 34:15-57.4; (2) insurance fraud pursuant to N.J.S.A. 17:33A-1 et seq. ("IFPA"); (3) common law fraud; (4) breach of contract; and (5) piercing the corporate veil against Durante individually. D.E. 110. Subsequently, Defendants brought a motion to dismiss the FAC, D.E. 111, which Plaintiffs oppose, D.E. 113.

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

4

*Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened pleading standard is designed to "ensure that defendants are placed on notice of the precise misconduct with

which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

## IV. DISCUSSION

At the outset, the Court notes that Defendants raise numerous potential defenses that are not appropriate for resolution at the motion to dismiss stage. Defendants argue that (1) they relied on the expertise of their broker; (2) Liberty retaliated and overcharged them by classifying all of All-Ply's employees as "roofers" so the highest premium rating would be applied; (3) the amounts included in the OCIP documents do not adequately reflect what Plaintiffs represented; (4) the NYSIF is to blame for any errors in the 2011- 2012 calendar year policy; and (5) they are entitled to equitable estoppel. Again, these are potential defenses; not bases for a motion to dismiss. As a result, the Court denies Defendants' motion to dismiss to the extent it is based on any of these arguments.

Additionally, while it appears that Defendants are moving to dismiss the entire FAC, they do not specifically mention Count IV – breach of contract. Defendants do not give the Court any reason why this count is insufficiently pled, and it is not dismissed. Therefore, the Court will address the remaining counts (I, II, III and V) under the Rule 12(b)(6) and Rule 9(b) standards.

Count I

In Count I, Plaintiffs bring a claim of Workers' Compensation Fraud pursuant to N.J.S.A. 34:15-57.4. N.J.S.A. 34:15-57.4(b) creates a statutory cause of action against "any person who wrongfully obtains benefits or evades the full payment of benefits or premiums by means of a violation of [this statute]." *Hartford Underwriters Ins. Co. v. Paystaffing, LLC*, No. 16-1128, 2017 WL 773877, at *3 (D.N.J. Feb. 28, 2017). In order to bring a civil claim under Section 34:15-

57.4(b), a party must allege a "violation of the provisions" of subsection (a). *Id.* This section is violated when a person "purposely or knowingly:"

> (2) Makes a false or misleading statement, representation or submission, including a misclassification of employees, or engages in a deceptive leasing practice, for the purpose of evading the full payment of benefits or premiums pursuant to R.S.34:15-1 et seq.; or
>
> (3) Coerces, solicits or encourages, or employs or contracts with a person to coerce, solicit or encourage, any individual to make a false or misleading statement, representation or submission concerning any fact that is material to a claim for benefits, or the payment of benefits or premiums, pursuant to R.S.34:15-1 et seq. for the purpose of wrongfully obtaining the benefits or of evading the full payment of the benefits or premiums.

N.J.S.A. 34:15-57.4(a)(2). In this context, a person acts "knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result." *Bellino v. Verizon Wireless*, 435 N.J. Super. 85, 96 (App. Div. 2014) (citing N.J.S.A. 2C:2-2). Thus, "the fraudulent statement must be made with a conscious objective to obtain benefits to which one knows he or she is not entitled or with an awareness that the intentional falsehood will cause the desired result of fraudulently obtaining benefits." *Id.*

Defendants argue that this claim should be dismissed because Plaintiffs do not allege that "the Defendants *knowingly* made any of the individual representations alleged for the purpose of evading the full payment of premiums." Def. Br. at 10 (emphasis added). Instead, Defendants argue, Plaintiffs attempt to aggregate multiple allegations, "any of which individually may be insufficient to prove liability under the statute." *Id.* at 10-11. Thus, Defendants contend that Plaintiffs' allegations in Count I are insufficient to state a cause of action. *Id.* at 11.[4]

---

[4] Defendants also argue, with respect to Counts I, II and III, that Plaintiffs' claims are outside the statute of limitations required for each count. *See* Def. Br. at 11, 17, 20. Plaintiffs respond that

7

Under Count I, Plaintiffs enumerate many representations and submissions made by Defendants that Plaintiffs allege were false and misleading. *See* FAC ¶¶ 61(a)-(k), 62(a)-(j). Then, Plaintiffs state that "[t]he breadth, constituency and patterns of the misrepresentations, documents, and submissions set forth [in the previous paragraphs] affirm that they were purposely or knowingly made." *Id.* ¶ 63. Therefore, Plaintiffs have specifically and plausibly alleged facts to support the claim that Defendants "purposefully or knowingly" made false or misleading statements in order to avoid the full payment of premiums. *See, e.g., id.* ¶¶ 61-63, 66-68; *see also Hartford Underwriters Ins. Co.*, 2017 WL 773877, at *3 (denying a motion to dismiss claim for workers' compensation fraud when plaintiff alleged nearly identical language in the complaint); Fed. R. Civ. P. 9(b) ("[K]nowledge, and other conditions of a person's mind may be alleged generally."). Defendants' motion to dismiss Count I is denied.

Count II

---

the "discovery rule," which tolls the statute of limitations from running when parties are "reasonably unaware that they have been injured," applies. Pl. Opp'n at 29.

Generally, "statute of limitations is an affirmative defense not routinely decided on a motion to dismiss." *Abdul-Aziz v. Lanigan*, No. 14-2026, 2016 WL 1162753, at *4 (D.N.J. Mar. 24, 2016). There is an exception, however, if "the plaintiff's tardiness in bringing the action [is] apparent from the face of the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105 n.13 (3d Cir. 2010) (citing *Robinson v. Johnson*, 313 F.3d 128, 135 & n.3 (3d Cir. 2002)).

Here, Plaintiffs allege that, pursuant to the discovery rule, they have filed timely claims. "The court must undertake an individualized consideration of the facts of the case in which plaintiff seeks to invoke the [discovery] rule." *Kominsky v. C.B. Planning Servs. Corp.*, No. A-1344-09T3, 2010 WL 3516808, at *4 (N.J. App. Div. Sept. 9, 2010). Thus, at this time, without the benefit of factual discovery, the Court cannot determine whether the discovery rule applies. Therefore, Defendants' motion to dismiss based on a violation of the statute of limitations is denied without prejudice.

8

Count II is brought pursuant to the IFPA. The IFPA was enacted "to confront aggressively the problem of insurance fraud . . . [by] requiring the restitution of fraudulently obtained insurance benefits. N.J.S.A. 17:33A-2. Pursuant to the IFPA, a person violates the law if he:

> [p]resents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim . . .

N.J.S.A. 17:33A-4(a)(1). Thus, "[a] [p]laintiff must essentially prove (1) knowledge, (2) falsity, and (3) materiality." *Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program*, No. 10-3197, 2015 WL 8345537, at *4 (D.N.J. Dec. 8, 2015). This statute is to be construed liberally, consistent with its purpose. *Allstate Ins. Co. v. Northfield Med. Ctr., P.C.*, No. A-0636-12T4, 2014 WL 8764091, at *10 (N.J. App. Div. May 4, 2015). Therefore, "[u]nlike common law fraud, proof of fraud under the IFPA does not require proof of reliance on the false statement or resultant damages . . . nor proof of intent to deceive." *Horizon Blue Cross Blue Shield of N.J.*, 2015 WL 8345537, at *4.

Defendants argue that Plaintiffs have not sufficiently pled the IFPA's requirement of "knowledge." Def. Br. at 16–17. Defendants contend that Plaintiffs pled "simply a formulaic recitation tracking the language of N.J.S.A. 17:33A-4," which is "insufficient to withstand a motion to dismiss." *Id.* at 16. Further, Defendants argue that the pleading "states boldly and without any factual foundation that the Defendants knew that the representations contained false or misleading information." *Id.* at 17.

In support of its position, Defendants cite to *Allstate Ins. Co. v. Northfield Med. Ctr., P.C.*, No. A-0636-12T4, 2014 WL 8764091, at *10 (N.J. App. Div. May 4, 2015). There, the New Jersey appellate court reversed a trial court's decision on liability under the IFPA. *Id.* In so holding, the court determined that "[t]he burden of proof for an IFPA violation is the

9

preponderance of the evidence," and that plaintiff failed to meet this burden at trial. *Id.* at 14. However, the current matter is not at the summary judgment or trial stage. At this time, Plaintiffs do not need to show that Defendants violated the statute by a preponderance of evidence. Rather, Plaintiffs only need to plead allegations with particularity that make it plausible that Defendants violated the statute. *See Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 9(b).

The Complaint makes numerous allegations consistent with a violation of the IFPA. Specifically, Plaintiffs allege that "[Defendants] purposely or knowingly made a false or misleading statement, representation or submission for the purpose of evading the full payment of premium." FAC ¶¶ 66-67. Additionally, Plaintiffs allege specific factual instances of Defendants' conduct to support the element of knowledge. *See, e.g.*, FAC ¶¶ 78(a)-(k) (alleging specific instances of misrepresentations made by Defendants in order to obtain a lower workers' compensation premium). Therefore, Plaintiffs state a claim against Defendants under the IFPA. *See Virginia Sur. Co. v. Macedo*, No. 08-5586, 2011 WL 1769858, at *16 (D.N.J. May 6, 2011) (finding that a complaint stating that defendants "prepared a writing containing materially false statements . . . in order to support [their] insurance claims" was sufficient to state a claim under the IFPA).

Count III

Next, Plaintiffs bring a claim for common law fraud. In New Jersey, common law fraud requires a party to show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 525 (D.N.J. 2008).

Defendants allege that Plaintiffs cannot sustain a claim for fraud because Defendants merely estimated the number of employees that fell within the various classification codes. Def. Br. at 19. Defendants cite to *Granite State Ins. Co. v. UJEX, Inc.*, No. 03-1220, 2005 WL 1618792, at *8 (D.N.J. July 11, 2005), for the proposition that defendants cannot be liable for common law fraud when "the figures which the defendants communicated to the insurer were preliminary and were based only on the employers' best estimates." *Id.* at 17. Additionally, Defendants argue that Liberty cannot show that it reasonably relied on Defendants' alleged misrepresentations, therefore, Plaintiffs cannot state a claim for common law fraud. *Id.* at 19.

Defendants' arguments focus on whether the alleged misrepresentations were merely "estimates" and therefore not material misrepresentations of fact and whether Plaintiffs have pled reasonable reliance. *Granite State* supports the proposition that good faith, reasonable estimates cannot give rise to a claim of common law fraud. 2005 WL 1618792, at *8. In that case, the plaintiff workers' compensation insurer alleged that the defendants materially misrepresented employment and payroll figures, as well as employment classification codes in their applications for workers' compensation insurance. *Id.* at *7. Discovery revealed that "the figures [d]efendants communicated to [p]laintiffs in their applications for insurance were preliminary and based only on [d]efendants' best estimates, which . . . were reasonable." *Id.* at *8. Since estimates are "inherently imprecise and incapable of absolute exactitude," the court determined that they "were an expression of [defendants'] opinions," which cannot form a basis for common law fraud. *Id.*

Plaintiffs respond that they have provided dates of misrepresentations in the amended complaint that were made after the initial application. Pl. Opp'n at 26. This, Plaintiffs suggest, shows that Defendants never intended to "provide true and correct information, or to cooperate

11

fully with Liberty as an assigned carrier, and to promptly inform Liberty of changes in the underwriting information provided to it." *Id.*

As noted, Plaintiffs allege that Defendants promised accuracy in their application and subsequently misrepresented: (1) their remuneration to OCIP carriers, (2) their reported payroll to the NYSIF, and (3) the misclassification of their employees for purposes of determining workers' compensation premiums. FAC ¶¶ 61-62. Specifically, Plaintiffs allege that Defendants made misrepresentations between February 2007 and September 2013. *See id.* These misrepresentations include, among others, (1) that remuneration on OCIP totaled $333,650 for three projects, (2) that All-Ply reported $490,467 of the payroll to the NYSIF, (3) that Stanislaw Jedryczka and Stanislaw Skupien did not work on roofs, and (4) that Edward Poterala was strictly an office employee. *Id.* Therefore, Plaintiffs' claims are not merely based on "estimates" made on the initial application, but rather an alleged continuing fraud by the Defendants. Thus, *Granite State* is inapplicable.[5] These statements, including the dates on which they occurred, meet the particularity requirement for pleadings of fraud. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 595 (D.N.J. 1996) (finding that "allegations of date, place or time" satisfy the "particularity" requirement).

Additionally, Plaintiffs allege that they reasonably relied on these misrepresentations regarding the premium amounts, which is the basis for damages in this suit. *See* FAC ¶ 92. Assuming these allegations are true, Plaintiffs' allegations plausibly assert a claim for common

---

[5] Additionally, the court in *Granite State* based its decision to dismiss the plaintiffs' common law fraud claim on the fact that the complaint contained only broad generalizations related to the allegations of fraud. 2005 WL 1618792, at *8. Since Rule 9(b) requires pleading with particularity, the court found that plaintiffs could not meet the heightened standard. *Id.* Here, Plaintiffs have pled their fraud allegations with sufficiently particularity to meet the requirements of Rule 9(b).

12

law fraud. *See Virginia Sur. Co.*, 2011 WL 1769858, at *17 (finding allegations that defendants submitted a false questionnaire, insurance claims, W-2 form and construction contract to secure workers' compensation benefits was sufficient to plead a claim of common law fraud).

Count V

Plaintiffs bring Count V against James Durante, All-Ply's President, Treasurer, and Chief Financial Officer. Thus, Count V attempts to "pierce the corporate veil" and hold Durante personally liable for his actions at All-Ply. Generally, "shareholders and members of a corporate entity are shielded from individual liability." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 680 (D.N.J. 2009). However, "[p]iercing the corporate veil is an equitable remedy through which a court may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form." *The Mall at IV Grp. Props., LLC v. Roberts*, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005). "Although veil-piercing is not a separate cause of action, but rather a basis for a cause of action against particular individuals, on a motion to dismiss [] a court must examine . . . whether the facts pleaded . . . state a cause of action on a theory of piercing the corporate veil." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 510 (E.D. Pa. 2014) (internal quotation marks omitted).

In New Jersey, two elements must be shown to pierce the corporate veil: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist;" and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *The Mall at IV Grp. Props., LLC*, 2005 WL 3338369, at *3. The Third Circuit instructs district courts to consider the presence of the "*Pearson* factors" to determine whether the corporation and individual "function[] as a single entity and should be treated as such." *Pearson v. Component Tech. Corp.*, 247 F.3d

13

471, 485 (3d Cir. 2000) (internal quotation marks omitted). The following factors should be considered:

> (1) Gross undercapitalization of the corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) insolvency of a debtor corporation; (5) siphoning of funds from the debtor corporation by the dominant stockholder; (6) nonfunctioning of corporate officers and directors; (7) absence of corporate funds; and (8) whether the corporation is merely a façade for the operations of the dominant stockholder.

*Id.* at 484–85; *see also Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 769–770 (D.N.J. 2013) (considering "whether any of the *Pearson* factors set forth by the Third Circuit are present [] to justify the actual piercing of the veil.")

Defendants argue that the FAC "entirely omits the required allegation that there was [] a unity of interest and ownership that the separate personalities of [All-Ply] and Durante ceased to exist." Def. Br. at 22. Additionally, Defendants contend that the complaint does not set forth any of the *Pearson* factors as required by the Third Circuit. *Id.*

The Court agrees with Defendants. Throughout the FAC, Plaintiffs contend that Durante was All-Ply's President, Treasurer, and Chief Financial Officer, and that it was Durante who made false and misleading statements on behalf of All-Ply. FAC ¶¶ 4, 62. Further, Plaintiffs aver that Durante "used All-Ply to perpetrate fraud or injustice, or to otherwise circumvent the law." *Id.* ¶ 98. However, Plaintiffs fail to set forth sufficient facts to allege *any* of the *Pearson* factors. *See, e.g., Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (refusing to pierce the corporate veil when plaintiff alleged none of the *Pearson* factors); *State Capital Title & Abstract Co.*, 646 F. Supp. 2d at 680 (dismissing the complaint as to individual shareholders when plaintiff failed to allege any of the necessary factors). Thus, Plaintiffs fail to

allege what is legally necessary to pierce the corporate veil of All-Ply and hold Durante personally liable. Count V is therefore dismissed.

### V. CONCLUSION

In sum, the Court **DENIES** Defendants' motion as to Counts I, II, III and IV. The Court **GRANTS** Defendants' motion as to Count V without prejudice. Plaintiffs have thirty (30) days to file an amended complaint, if they so choose. An appropriate Order accompanies this Opinion.

**Date:** April 5, 2017

JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE