Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LM INSURANCE CORPORATION AND
LIBERTY INSURANCE CORPORATION,

*Plaintiffs*,

v.

ALL-PLY ROOFING CO., INC. AND JAMES
DURANTE,

*Defendants*.

Civil Action No. 14-4723

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This case concerns allegations that Defendants All-Ply Roofing Co., Inc. ("All-Ply") and

James Durante (collectively, "Defendants") engaged in a scheme to fraudulently reduce All-Ply's

workers' compensation premiums. Pending before the Court are three motions for summary

judgment: (1) Plaintiffs LM Insurance Corporation and Liberty Insurance Corporation's

(collectively, "Plaintiffs" or "Liberty") Motion for Partial Summary Judgment (D.E. 170); (2)

Plaintiffs' Motion for Summary Judgment as to the Remaining Counts of the Counterclaim (D.E.

171); and (3) Defendants' Motion for Summary Judgment (D.E. 172).[1] The Court reviewed the

---

[1] Plaintiffs' brief in support of their motion for partial summary judgment is referred to through
this opinion as "Plfs' Br." (D.E. 170); Defendants' opposition is referred to as "Defs' Opp." (D.E.
179); and Plaintiffs' reply brief is referred to as "Plfs' R. Br." (D.E. 183). Plaintiffs' brief in
support of their motion for summary judgment as to the remaining counts of the counterclaim is
referred to as "Plfs' CC Br." (D.E. 171); Defendants' opposition is referred to as "Defs' CC Opp."
(D.E. 180); and Plaintiffs' reply is referred to as "Plfs' CC R. Br." (D.E. 182). Defendants' brief
in support of their motion for summary judgment is referred to as "Defs' Br." (D.E. 172);
Plaintiffs' brief in opposition is referred to as "Plfs' Opp." (D.E. 178); and Defendants' reply is
referred to as "Defs' R. Br." (D.E. 184).

submissions made in support and in opposition of the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiffs' motions are **GRANTED IN PART and DENIED IN PART**, and Defendants' motion is **DENIED**.

## I. BACKGROUND[2]

In 2003, All-Ply's workers' compensation broker submitted a New Jersey Workers' Compensation Insurance Plan Application for Designation of an Insurance Company ("the Application") to the New Jersey Compensation Rating and Inspection Board ("CRIB"). PSOMF ¶ 6; DR ¶ 6. On January 18, 2005, CRIB assigned Liberty to provide coverage to All-Ply. PSOMF ¶ 7. Liberty then provided workers' compensation and employer's liability insurance coverage to All-Ply through nine consecutive annual policies between March 27, 2005 and June 12, 2013. PSOMF ¶ 9.

For each policy, All-Ply initially paid an estimated premium. Each policy provided that when the policy ended, the final premium would be calculated "using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." PSOMF ¶ 10. In addition, through the policy language and the New Jersey Workers Compensation Insurance Plan Eligibility Endorsement, All-Ply agreed that Liberty could audit and examine All-Ply's records that were related to the policies at issue. PSOMF ¶¶

---

[2] The background facts are drawn from Plaintiffs' Statement of Material Facts Not in Dispute ("PSOMF"), D.E. 170-2, and Defendants' response ("Defs' Resp. to PSOMF"), D.E. 180-2; Defendants' Statement of Undisputed Material Facts ("DSOMF"), D.E. 172-2; Plaintiffs' Statement of Material Facts in Support of its Motion to Dismiss the Counterclaims ("PCCSOMF"), D.E. 171-1; the Declaration of James Durante ("Durante Decl."), D.E. 179-3, and the Declaration of Perola Andersson ("Andersson Decl."), D.E. 170-4.

10-11. Liberty was permitted, pursuant to each policy, to conduct an audit within three years of the policy end-date. Liberty conducted audits of All-Ply on nine separate occasions *Id.* ¶¶ 10, 12.

In approximately December 2012, All-Ply was assigned to analyst Perola Andersson, who worked in Liberty's Premium Fraud Special Investigations Unit ("SIU"). PCCSOMF ¶ 12. All-Ply came to the attention of the SIU after All-Ply filed a complaint with CRIB as to a 2011/2012 policy audit. *Id.* ¶ 13. Through Andersson's audit, Liberty reportedly uncovered three fraud schemes, which are at issue in this litigation. Plaintiffs believe that All-Ply was able to avoid higher premiums for the workers' compensation policies at issue because of the alleged fraud. *See., e.g., id.* ¶ 72. As a result, after the SIU audit, Liberty reclassified every All-Ply employee as a roofer, which increased the premium amounts owed by All-Ply for each of the policies. DSOMF ¶¶ 126, 134. Defendants deny that they engaged in any fraud, and All-Ply has not paid any part of the increased premiums. PSOMF ¶ 35; DSOMF ¶ 114.

Misclassification of Employees

First, Liberty contends that All-Ply engaged in a fraudulent scheme to reduce its workers' compensation premiums by making misrepresentations and omissions as to the actual job duties of certain employees, including All-Ply's officers. *See, e.g.,* PSOMF ¶¶ 19-35. For each of the policies at issue, Plaintiffs contend that during each audit Defendants represented that certain employees were not roofers when the employees were in fact roofers. *See, e.g.,* PSOMF ¶¶ 20-24. In support, Plaintiffs relied on records from All-Ply's third-party payroll processing company CTS. According to Plaintiffs, All-Ply directed CTS to designate "roofers" in a "department" called "Phase 1" and other employees were "sometimes" designated as "Phase 2." *Id.* ¶ 15. In addition, All-Ply prepared certified payroll reports, as required by New Jersey law, for its work on public jobs. All-Ply was required to certify that its classifications for employees in each report "conform

with the work he performed," and Durante repeatedly certified All-Ply's payroll report as accurate. *Id.* ¶¶ 16-17. Some employees that were not categorized as roofers for Liberty's insurance coverage, however, were classified as roofers in the CTS records and the certified payroll reports. *See, e.g., id.* ¶¶ 20-24, 47.

Defendants counter that based on the work that was actually performed by its employees, certain employees should never have been classified as roofers. *See, e.g.,* Durante Decl. ¶¶ 58-60, 62-63. Moreover, Defendants maintain that other employees never performed roofing work, and in some cases, documents categorizing them as roofers were incorrect. *Id.* ¶¶ 64-65. In fact, Defendants contend that the office employees who prepared the payroll reports were unfamiliar with workers' compensation classification codes. Response to PSOMF ¶ 15. Finally, Defendants argue that certified payroll reports are unrelated to workers' compensation insurance coverage and are prepared in accordance with Department of Labor rules and regulations. As a result, Plaintiffs improperly relied upon these documents to reclassify All-Ply's employees as roofers. Response to PSOMF ¶ 17.

Plaintiffs add that All-Ply provided Plaintiffs with incorrect information as to All-Ply's officers' salary and incorrectly represented that its officers performed no roofing work. *See, e.g., id.* ¶¶ 56-57, 85. Defendants deny that Durante or Poterala, All-Ply's officers, are roofers. Durante Decl. ¶¶ 6, 8. In addition, the officer salary information provided to Liberty was only an estimate. *See, e.g.,* Durante Decl. ¶ 53.

OCIP Deductions

Second, Plaintiffs allege that All-Ply reported inaccurate Owner Controlled Insurance Project ("OCIP") payroll amounts to Plaintiffs, which ultimately lowered Defendants' premiums. *See, e.g., id.* ¶¶ 53, 64. Under an OCIP, a contractor such as All-Ply may have payroll reported to the OCIP workers' compensation insurer deducted from its premium base for the New Jersey involuntary market. Andersson Decl. ¶ 45. In other words, All-Ply is not responsible for such premium payment; the OCIP entity is.

Here, Plaintiffs point to two different policies in which All-Ply allegedly overrepresented the amount that should have been deducted for OCIPs. For the 2008/2009 policy, All-Ply claimed $240,575.24 for OCIPs but All-Ply's CTS records indicate that All-Ply only paid $139,207.37. PSOMF ¶ 53. Thus, All-Ply overrepresented its OCIP amount by approximately $101,000. For the 2009/2010 policy, All-Ply reported $403,037.14 in OCIP payrolls, but All-Ply's CTS records only indicate that All-Ply paid $312,340.99 in OCIP payroll. Thus, Plaintiffs maintain that All-Ply overstated the OCIP amount by $90,696.15. *Id.* ¶ 63.

Defendants seemingly concede that All-Ply's reported OCIP deductions were not correct, albeit by amounts different than Plaintiffs' contend. Specifically, Defendants claim that the audit results demonstrate that the total remuneration for OCIP payrolls, which should not have been included as payroll for Liberty's premium calculations, totals $355,665.01 rather than $333,650. Response to PSOMF ¶ 53. Despite both parties' recognition that the reported OCIP payroll amount is incorrect, Plaintiffs fail to present evidence demonstrating that All-Ply or Durante knowingly or intentionally misrepresented the OCIP amounts.

NYSIF Deductions

The last alleged fraud scheme is that All-Ply provided Liberty with inaccurate information about its New York State Insurance Fraud ("NYSIF") payroll. If a New Jersey employer has operations in another state, such as New York, that employer may ask its New Jersey workers' compensation insurer to deduct payroll that it reported for the other state, such as the NYSIF. Andersson Decl. ¶¶ 28-29. Plaintiffs identify two policies to demonstrate that this fraud occurred. For the 2009/2010 policy, All-Ply claimed that $109,251 had been reported to the NYSIF, and should be deducted from the Liberty policy base. PSOMF ¶ 64. Plaintiffs, however, claim that All-Ply only reported $1,665 of construction payroll to the NYSIF. Id. ¶ 65. For the 2011/2012 policy, All-Ply represented to Liberty that $490,466.72 should be excluded because it pertained to New York jobs and the NYSIF. Id. ¶ 82. Plaintiffs maintain, however, that the NYSIF only picked up $100,766 of All-Ply's payroll for this period. Id. ¶ 82.

After All-Ply initially claimed that $490,466.72 should be excluded from the Liberty Mutual audit, Durante reduced this amount in a 2012 letter by approximately $20,000, to $470,902. PSOMF ¶ 82. Plaintiffs also contend that Durante knew the NYSIF amount was incorrect because Durante testified that in February 2013, he knew that the auditor for All-Ply's New York policy only picked up $100,766. Deposition of James Durante at T106:21-108:2 (Oct. 22, 2015) (hereinafter "Durante Dep."). But at the time, All-Ply had asked the New York carrier for a re-audit. Id. at T107:21-22.

## II. PROCEDURAL HISTORY

On July 29, 2014, Plaintiffs filed their Complaint against All-Ply, asserting claims for (1) breach of the implied covenant of good faith and fair dealing as to All-Ply's insurance policies with Plaintiffs; and (2) the increased amount of premiums purportedly due to Plaintiffs. While not

named as a defendant, the original complaint specifically named Durante; stated that Durante certified to provide truthful and correct information to Plaintiffs with respect to the workers' compensation policies; and sought for All-Ply to provide full, complete and truthful disclosures regarding All-Ply's operations. *See generally* Complaint, D.E. 1. All-Ply answered the complaint and asserted counterclaims for (1) breach of the implied covenant of good faith and fair dealing; (2) breach of contract; (3) equitable estoppel; and (4) negligent misrepresentation. The crux of All-Ply's counterclaims was that after Liberty concluded it was underpaying its premiums, Liberty retaliated by retroactively reclassifying all of All-Ply's employees as roofers. *See* Answer and Counterclaims, D.E. 9.

Plaintiffs filed a motion to dismiss the counterclaims in their entirety. D.E. 12. The Court dismissed All-Ply's breach of contract claim because All-Ply failed to specifically identify which contractual provisions were breached. *See* Motion to Dismiss CC Opinion at 10 (D.E. 27). All-Ply's negligent misrepresentation claims were likewise dismissed because All-Ply failed to identify a duty separate and apart from the contracts. *Id.* at 11-12. The Court, however, denied Plaintiffs' motion to dismiss the implied covenant of good faith and fair dealing claim and the equitable estoppel claim. The Court concluded that All-Ply's claims that Liberty "consciously manipulated Defendant's premium obligations so as to punish Defendant," and that this "injured the right of Defendant to receive the 'fruits' of the contract," were sufficient to state a claim. *Id.* at 7. For the equitable estoppel claim, All-Ply pled that Plaintiffs materially misrepresented that the quoted and estimated workers' compensation codes would be followed, and that All-Ply relied on these representations. The Court determined that All-Ply sufficiently stated an equitable estoppel claim. *Id.* at 10. Finally, the Court dismissed All-Ply's claim for attorneys' fees because All-Ply failed to point to any express statutory authorization, agreement, or an established

exception to the "American Rule" that would otherwise permit All-Ply to receive attorneys' fees. *Id.* at 8. On February 12, 2015, All-Ply filed an Amended Answer and Counterclaims that removed the dismissed counts. D.E. 35.

Plaintiffs filed an Amended Complaint on August 4, 2016, adding Durante as a defendant due to his alleged personal involvement in the fraud scheme. D.E. 110. In the Amended Complaint, Plaintiffs asserted statutory and common law fraud claims against All-Ply and Durante, a breach of contract claim solely against All-Ply, and a claim to pierce the corporate veil and hold Durante personally liable. *See generally Id.*

Defendants responded with a motion to dismiss the Amended Complaint. D.E. 111. Four of Plaintiffs' claim survived the motion to dismiss. The Court, however, dismissed Plaintiffs' claim to pierce the corporate veil. MTD Opinion at 14-15, D.E. 130. The Court provided Plaintiffs with an opportunity to file a third amended complaint, but Plaintiffs did not.

On January 31, 2018, the parties filed the instant motions for summary judgment. D.E. 170, 171, 172. Although there are three separate motions for summary judgment pending before the Court, the Court will address all three motions together because there are numerous overlapping issues.

### III. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary

judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## IV. DISCUSSION

At the outset, the Court addresses certain issues raised in the parties' motions before turning to the parties' substantive claims.

### Admissibility of Supporting Evidence

Plaintiffs make numerous arguments as to why Defendants' supporting information is insufficient and cannot be relied upon to support Defendants' arguments, namely the Certification of Mark R. Peck (the "Peck Certification"), D.E. 172-4. Plaintiffs maintain that Defendants improperly rely on their unverified counterclaims as facts; that Defendants cite to deposition testimony from Plaintiffs' fact witnesses who were never designated as Rule 30(b)(6) witnesses nor are parties to the litigation; that more than half of Defendants' "undisputed" materials facts are not supported by competent evidence; and that Defendants' expert testimony is inadmissible. Plfs' Opp. Br. at 5-8.

The Court agrees, in part. First, an unverified complaint is not evidence. *See VFB LLC v. Campbell Soup, Co.*, 482 F.3d 624, 636 (3d Cir. 2007). In addition, Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, [and] set out facts that would be admissible in evidence[.]" Fed. R. Civ. P. 56(c)(4). Similarly, Local Civil Rule 7.2(a) states that affidavits, declarations, and certifications "shall be restricted to statements of fact within the personal knowledge of the signatory." Here, much of the Peck Certification addresses facts outside of Peck's personal knowledge; for example, it improperly relies on Defendants' unverified Amended Counterclaim to establish facts. The Peck Certification, however, was ultimately not critical to the Court's analysis in deciding the current motions. Similarly, the Court does not rely on Defendants' experts in the current motions.

## Dismissal of Defendant James Durante

Defendants repeatedly argue that the Court should enter summary judgment affirming that Durante cannot be held personally liable in this matter. Defendants opine that because the Court dismissed Plaintiffs' claim to pierce the corporate veil, Durante cannot be held liable. Defs' Br. at 5-6. Defendants' novel argument is patently mistaken.

In its motion to dismiss opinion, the Court dismissed Count V, Plaintiffs' attempt to pierce the corporate veil without prejudice. MTD Opinion at 13-14. In doing so, the Court determined that Plaintiffs had not sufficiently alleged facts demonstrating that All-Ply did not have an existence separate from Durante. *Id.* Counts I through III were not dismissed and they are asserted against All-Ply and Durante, jointly and severally. Thus, Durante is still clearly a party to this litigation.

All-Ply seems to believe that if one of its corporate officers is involved in a fraud scheme, only the corporation may be liable. All-Ply provides no legal support for this argument nor could the Court find any. Rather, there is ample legal authority demonstrating that "a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 272 (2002); *see also* N.J.S.A. 17:33A-4(a) (stating that a "person or practitioner" can violate the Insurance Fraud Prevention Act). As a result, Defendants' motion for summary judgment as to this argument is denied.[3]

---

[3] Frankly, the Court is dismayed with Defendants' attempt to now argue that Durante effectively "won" dismissal of the counts which the Court permitted to stand.

**Statute of Limitations**

Defendants also maintain that summary judgment must be granted because Plaintiffs' claims are barred by the statute of limitations. In making this argument, Defendants rely on language that appears in each of the policies, which provides as follows:

> You will let us examine and audit all your records that relate to this policy. . . . We may conduct the audit during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium.

PSOMF ¶ 10. Based on this contractual language, Defendants maintain that Plaintiffs can only recover damages based on the 2011/2012 and 2012/2013 policies. Defs' Br. at 7-8. Defendants' theory appears to be that because Plaintiffs' audit rights only extended to three years past a policy period, the statute of limitations is similarly limited. The foregoing argument is the only one that Defendants make in their affirmative summary judgment motion. Defs' Br. at 6-8. Defendants' motion is denied as to this argument.

When a court has diversity jurisdiction, as is the case here, the court applies the choice-of-law rules of the forum state to determine controlling law, here New Jersey. *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). In this instance, the parties cite to New Jersey law and appear to presume that New Jersey law governs. Given the fact that this matter involves New Jersey workers' compensation insurance coverage for a New Jersey corporation, the Court agrees with the parties' reliance on New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir.

1999)). Accordingly, the Court looks to New Jersey law to determine the applicable statute of limitations for the asserted claims.

Defendants provide no legal authority to support their unusual argument – that the three-year audit period defines the statute of limitations period – nor could the Court find any. The policy language Defendants rely on addresses only the time during which Plaintiffs have audit rights. Nothing in the policy language limits Plaintiffs' ability to bring suit within the applicable statute of limitations.

This issue was addressed years ago in *Globe Indemnity Company v. Butler-Newark Bus Line*, 111 N.J.L. 586 (1933). The policies at issue in *Globe Indemnity* each contained a clause requiring the insurance company to examine defendant's books within a year of the policy dates to determine premium rates. After the insurance company ascertained the premium as required by the policies, an auditor discovered that the defendant had withheld information about wages and revenues that would have increased the premiums. When this information was disclosed to the insurance company, the insurance company brought suit. *Id.* at 588-89. At trial, a jury rendered a verdict in favor of the insurance company plaintiff. *Id.* at 587.

On appeal, the defendant argued that the plaintiff should have been barred from using the audit result because the audits occurred after the one-year time limit provided for in the policies. The *Globe Indemnity* court disagreed, stating as follows:

> The argument seems to be that no matter how fraudulent the bus line companies may have been, the insurance company should be barred after a period of one year from showing such fraud if the defendant companies had successfully concealed such fraud for a period of one year as provided in the contract. Even though the defendants might have been justified in refusing the company access to the books after a period of one year if the company by some means discovered the information disclosed it certainly cannot be said that such facts could not be proved at the trial even though access might not have been had to the books under the contract.

*Id.* at 590. The reasoning of *Globe Indemnity* applies with equal force here. Although Plaintiffs discovered the fraud once the audit period expired for six of the policies, nothing in the policy language limits Plaintiffs' ability to bring suit.

Defendants also raise a statute of limitations defense in opposition to Plaintiffs' motion for partial summary judgment. Defs' Opp. at 3-8. In doing so, Defendants provide a more substantive analysis of the relevant statutes (while also repeating their 3-year contractual argument outlined above). As a result, the Court will analyze the issue while cognizant that if Defendants are correct, the result is a denial (or partial denial) of Plaintiffs' motion, rather than judgment in favor of Defendants.

As discussed, Plaintiffs assert claims for (1) workers' compensation insurance fraud pursuant to N.J.S.A. 34:15-57.4; (2) insurance fraud pursuant to N.J.S.A. 17:33A-1 *et seq.* (the "IFPA"); (3) common law fraud; and (4) breach of contract. The workers' compensation statutory scheme is silent as to the applicable statute of limitations for fraud claims brought pursuant to N.J.S.A. 34:15-57.4. Without much analysis, Plaintiffs maintain that the six-year period set forth in N.J.S.A. 2A:14-1 applies (Plfs' Opp. at 17), and Defendants counter that the two-year period provided for in N.J.S.A. 2A:14-2 governs (Defs' Opp. at 3). When a statute is silent as to the applicable statute of limitations, a court should focus on the nature of the injury to determine which default statute of limitations is applicable. *See Montells v. Haynes*, 133 N.J. 282, 291 (1993) (applying two-year statute of limitations for personal injury suits to LAD claims); *Sandvik, Inc. v. Hampshire Partners Fund VI, L.P.*, No. 13-4667, 2014 WL 1343081, at *8 (D.N.J. Apr. 4, 2014) ("Where a statute is silent as to the statute of limitations for a cause of action, courts are 'directed to select a limitations period from among those periods applicable to actions seeking similar relief at common law.'" (quoting *Reichhold, Inc. v. U.S. Metals Ref. Co.*, 655 F. Supp. 2d 400, 446

(D.N.J. 2009))). N.J.S.A. 2A:14-2, the provision that Defendants argue applies, governs personal injury suits.[4] *Montells*, 133 N.J. at 291. N.J.S.A. 2A:12-1, the default statute that Plaintiffs argue is applicable, applies "primarily to actions for economic loss."[5] *Id.* Even though Plaintiffs use the Workers' Compensation Act as a basis for relief, this case involves economic harm based on alleged fraud; there are simply no allegations of personal injury here. Consequently, the Court concludes that the six-year period of N.J.S.A. 2A:14-1 governs Plaintiffs' workers' compensation fraud claim.

As for Count Two, the IFPA clearly states that claims must be brought within six years of accrual. N.J.S.A. 17:33A-7(e). Finally, Plaintiffs' common law fraud and breach of contract claims also have a six-year statute of limitations. *Binder v. Price Waterhouse & Co., L.L.P.*, 393 N.J. Super. 304, 309 (App. Div. 2007) (stating that breach of contract actions have a six-year statute of limitations); *Nester v. O'Donnell*, 301 N.J. Super. 198, 204 (App. Div. 1997) (stating that the statute of limitations for fraud is six years). Accordingly, a six-year statute of limitations applies to each of Plaintiffs' claims.

Plaintiffs argue that because the contractual audit period for All-Ply's earliest Liberty Mutual policy expired on March 27, 2009, they had to bring suit by March 27, 2015, without running afoul of the six-year statute limitations and without benefit of the discovery rule.[6] Plfs'

---

[4] N.J.S.A. 2a:14-2 provides that a two-year statute of limitations applies to "[e]very action at law for an injury to the person caused by the wrongful act."

[5] N.J.S.A. 2A:14-1 provides that a six-year statute of limitations applies to claims for, among other things, "any tortious injury to real or personal property, . . . , for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied . . . ."

[6] Plaintiffs alternately argue that their claims are timely because the discovery rule applies here. Plfs' Opp. at 17-19. As will be discussed, the Court concludes that Plaintiffs' claims are not time-

Reply at 7. Plaintiffs filed their Complaint on July 29, 2014 -- well within the required time-frame. D.E. 1. On August 4, 2016, however, Plaintiffs filed an Amended Complaint that named Durante as a Defendant and included the three fraud claims. D.E. 110. Plaintiffs maintain that these new claims relate back to the original filing date, such that they are not barred by the statute of limitations. Plfs' R. Br. at 9.[7]

Plaintiffs' original Complaint asserted two claims against All-Ply: (1) a claim for breach of the implied covenant of good faith and fair dealing that was encompassed in All-Ply's insurance policies with Plaintiffs; and (2) for the increased amount of premiums purportedly due to Plaintiffs. Moreover, the original Complaint specifically named Durante (although not as a Defendant), stated that Durante certified that he would provide truthful and correct information to Plaintiffs with respect to the workers' compensation policies, and sought for All-Ply to provide full, complete and truthful disclosures regarding All-Ply's operations. Through discovery, Plaintiffs determined that All-Ply's incorrect information was intentionally provided to decrease All-Ply's premiums, and that Durante played a role in the alleged fraud scheme. As a result, Plaintiffs filed their Amended Complaint that included this new information, adding fraud claims and naming Durante as a defendant. *See, e.g.*, Am. Compl. ¶¶ 46-49 (discussing payroll records obtained through discovery that were personally certified by Durante). Nevertheless, the Amended Complaint

---

barred. Therefore, the Court does not address the parties' extensive arguments about the discovery rule.

[7] Because Plaintiffs concede that the 2009 date is applicable, the Court abides by it in conducting the current analysis. However, if the discovery rule applies, then the accrual date would most likely be much later. Plaintiffs discovered the insurance fraud in early 2013, after All-Ply was referred to the SIU in December 2012 and the SIU auditor began his investigation. Andersson Declaration ¶¶ 19-22. Thus, Plaintiffs' claims arguably accrued in early 2013 when Plaintiffs first discovered the alleged fraud. If so, the "relation back" analysis is unnecessary because the amended complaint was also filed within the six-year statute of limitations.

involves the same insurance policies and general allegations of misrepresentations as those in the original Complaint.

Federal Rule of Civil Procedure 15(c) allows a party to amend a pleading to add new claims and parties that "relate back" to the date of the original filing for statute of limitations purposes. *Mullin v. Balicki*, 875 F.3d 140, 158 (3d Cir. 2017). Rule 15(c)(1)(A) provides that an amended pleading relates back to the original filing date if "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A); *see also DeRienzo v. Harvard Indus., Inc.*, 357 F.3d 348, 353 (3d Cir. 2004) ("The court may apply the state law that establishes the limitations period to determine whether relation back is permissible."). Pursuant to New Jersey Court Rule 4:9-3, new claims in an amended pleading relate back if they "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading; but the court . . . may, upon terms permit the statement of a new or different claim or defense in the pleading." N.J. Ct. R. 4:9-3.

The new claims against All-Ply in the Amended Complaint clearly arise out of the same alleged conduct, transactions, and occurrences, and therefore, relate back to the original pleading. Both pleadings focus on misrepresentations as to All-Ply employees' job duties, compensation, and the proper calculation of All-Ply's workers' compensation premiums. Accordingly, Plaintiffs' new claims against All-Ply are not barred by the statute of limitations.

As recognized by Plaintiffs, however, New Jersey Court Rule 4:9-3 addresses relation back to correct a party name, rather than add an entirely new defendant. Thus, it does not dictate whether Plaintiffs' claims in the Amended Complaint against Durante also relate back to the original filing date. Because New Jersey law does not address whether the claims asserted against Durante relate back, the Court considers whether the amendment adding a new defendant was proper under

Federal Rule of Civil Procedure 15(c)(1)(C). *See, e.g., Hottenstein v. City of Sea Isle City*, No.

11-740, 2012 WL 12898844, at *2-5 (D.N.J. Aug. 16, 2012) (determining that proposed

amendment adding new defendants did not relate back under Rule 15(c)(1)(A) but did relate back

under Rule 15(c)(1)(C)); *see also Padilla v. Township of Cherry Hill*, 110 F. App'x 272, 278 (3d

Cir. 2004) ("Because New Jersey law does not permit relation back, relation back is not allowed

under Rule 15(c)(1). Nonetheless, relation back may still be permitted under Rule 15(c)(3).").

A party must satisfy three conditions to add or change a party pursuant to Rule 15(c)(1)(C):

(1) the new claims must arise from the same conduct as the original pleading; (2) the newly named

party must have received notice of the action within the period set forth by Rule 4(m), such that

he would not be prejudiced in defending on the merits; and (3) the newly named party must have

known, or should have known, that but for a mistake concerning the proper party's identity, the

action would have been brought against the newly named party in the initial pleading. *Stewart v.

Phila. Hous. Auth.*, 487 F. Supp. 2d 584, 590-91 (E.D. Pa. 2007) (stating that claims against new

defendant related back, in part, because the plaintiff may not have known that the new defendant

"could have or should have been named" when the original complaint was filed); *see also Arthur

v. Maersk, Inc.*, 434 F.3d 196, 208 (3d Cir. 2006) (stating that mistake concerning the identity of

the party can come about through lack of knowledge or misidentification).

As discussed, the Amended Complaint "asserts a claim or defense that arose out of the

conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P.

15(c)(1)(B); *see also Flaherty v. Guala Pack N. Am., Inc.*, No. 17-8895, 2018 WL 4145899, at *3

(D.N.J. Aug. 29, 2018) (stating that N.J. Ct. R. 4:9-3 "is nearly identical to Fed. R. Civ. P.

15(c)(1)(C)"). Moreover, Durante had sufficient notice of the action. Notice is sufficient under

Rule 15(c)(1)(C) "when a party has a reasonable expectation of being named as a defendant after

learning about the litigation through some informal means." *Browning v. Safmarine, Inc.*, 287 F.R.D. 288, 291 (D.N.J. 2012). Further, "once it is established that the newly named defendant received some sort of notice within the relevant time period, the issue becomes whether that notice was sufficient to allay any prejudice the defendant might have suffered by not being named in the original complaint." *Edwards v. Middlesex County*, No. 08-6359, 2010 WL 2516492, at *4 (D.N.J. June 14, 2010). Here, Durante had actual notice of the litigation when it was first filed and appears to have been an active participant in defending the matter before he was named a defendant. Durante is All-Ply's President, Treasurer, and Chief Financial Officer (DSOMF ¶ 3), and appears to have been closely involved in obtaining All-Ply's workers' compensation coverage and its daily operations. *See* Declaration of James Durante, D.E. 179-3. Therefore, Durante and All-Ply are "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation as to the other." *Edwards*, 2010 WL 2516492, at *4. Because Durante was aware of this litigation from its inception and appears to have been an active participant before he was named as a defendant, he is not prejudiced by having to maintain a personal defense now.

In addition, discovery provided Plaintiffs with additional material clarifying the scope of the alleged wrongdoing and reflecting Durante's personal involvement. Accordingly, it does not appear that Plaintiffs intentionally failed to include Durante for strategic reasons when they initially filed suit. *See, e.g.*, *Campbell v. Sedgwick Detert, Moran & Arnold*, No. 11-642, 2013 WL 1314429, at *7 (D.N.J. Mar. 28, 2013) (concluding that the third requirement under Rule 15(c)(1)(C) was satisfied "as Plaintiff has plausibly argued that he []only learned during discovery that [the proposed new defendant] may have had an active role in Plaintiff's alleged termination").

In any event, Defendants have not presented any evidence that omitting Durante from the original Complaint was a strategic decision by Plaintiffs.

Consequently, the requirements of Rule 15(c)(1)(C) are met and the claims against Durante along with the new claims as to All-Ply, in the Amended Complaint relate back to the date of original filing Plaintiffs' claims, therefore, are timely Accordingly, Defendants' motion for summary judgments with respect to the statute of limitations and the discovery rule is denied.

**Plaintiffs' Claims**

Count One – Workers' Compensation Fraud, N.J.S.A. 34:15-57.4

New Jersey law imposes civil liability on "[a]ny person who wrongfully obtains benefits or evades the full payment of benefits or premiums by means of a violation of [N.J.S.A. 34:15-57.4(a)]." N.J.S.A. 34:15-57.4(b). A person violates subsection (a), among other things, if he purposefully or knowingly "[m]akes a false or misleading statement, representation or submission, including a misclassification of employees . . . for the purpose of evading the full payment of benefits or premiums[.]" N.J.S.A. 34:15-57.4(a)(2). An injured party is entitled to damages, and all reasonable costs and attorneys' fees. N.J.S.A. 34:15-57.4(b). In addition, subsection (c)(3) provides that "a person who evades the full payment of premiums pursuant to [the Workers' Compensation Act] . . . is liable to pay the sum due and owing plus simple interest." N.J.S.A. 34:15-57.4(c)(3). This subsection does not include an injury requirement; "the law simply states that a person who avoids paying premiums is liable." *Travelers Prop. Cas. Co. of Am. v. Quickstuff, LLC*, No. 14-6105, 2016 WL 7231605, at *5 (D.N.J. Dec. 14, 2016).

Plaintiffs argue that they are entitled to summary judgment for their workers' compensation fraud claim because for each policy period, Defendants misrepresented or failed to disclose job duties and payroll for All-Ply's employees as well as misrepresented All-Ply's OCIP and NYSIF

payroll amounts. Plfs' Br. at 20. However, to establish workers' compensation fraud under subsection (b), "the fraudulent statement must be made with a conscious objective to obtain benefits to which one knows he or she is not entitled or with an awareness that the intentional falsehood will cause the desired result of fraudulently obtaining benefits." *Bellino v. Verizon Wireless*, 435 N.J. Super. 85, 96 (App. Div. 2014). This is also the case for subsection (c), which imposes liability on a person who, among other things, "evades" full payment of workers' compensation insurance premiums. N.J.S.A. 34:15-57.4(c)(3). While not defined by the Workers' Compensation Act or the implementing regulations, the *Merriam-Webster* dictionary defines "evade" as "to avoid the performance of." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/evade; *see also Black's Law Dictionary* (10th Ed. 2014) (defining "tax evasion" as "[t]he willful attempt to defeat or circumvent the tax law in order to illegally reduce one's tax liability").[8]

"[A] defendant's state of mind typically should not be decided on summary judgment." *Landau v. Lucasti*, 680 F. Supp. 2d 659, 670 (D.N.J. 2010) (quoting *United States ex rel Cantekin v. Univ. of Pittsburgh*, 192 F.3d 402, 411 (3d Cir. 1999)); *see also Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 523-24 (3d Cir. 2004) ("Generally an insured's state of mind is an issue of fact for the jury. The issue of intent is particularly inappropriate for resolution by summary judgment because evaluating state of mind often requires the drawing of inferences from the conduct of parties about which reasonable persons might differ.") (internal quotations omitted)). Here, there

---

[8] Because "evade" is not defined in the statute or related regulations, the Court must consider "its generally accepted meaning, according to the approved usage of the language." *In re Election Law Enf't Comm'n Advisory Op. No. 01-2008*, 201 N.J. 254, 264 (2010) (quoting N.J.S.A. 1:1-1). The Court cites to the foregoing definitions for purposes of the current motion only. The Court is not making a final determination as to the appropriate definition for evade vis-à-vis this matter. The definition could prove critical in resolution of this matter, and the Court will require more in-depth briefing on the issue from the parties before rendering a final ruling on the correct definition.

is a genuine issue of material fact as to whether Defendants knowingly or purposefully made any misrepresentations in order to avoid premiums for any of the policies at issue or evaded full payment.

For each of the three alleged schemes, Plaintiffs fail to demonstrate that no genuine dispute of material fact exists as to Defendants' requisite state of mind. Defendants also cite to evidence which support a contrary finding. Moreover, while Plaintiffs establish that the actual amounts that should have been backed out of the base premium for OCIPS (Defs' Response to PSOMF ¶ 53) and NYSIF (*id.* ¶ 82) are different than what All-Ply reported, Plaintiffs again fail to establish that no genuine issue of material fact exists as to whether the errors were purposeful or knowing. Instead of providing evidence demonstrating that Defendants knew they were providing incorrect information, Plaintiffs seemingly ask the Court to infer that Defendants' possessed the requisite state of mind. *See* Plfs' R. Br. at 3-7. But in deciding a motion for summary judgment, all justifiable inferences are to be drawn in favor of the nonmoving party.[9] *Marino*, 358 F.3d at 247 (quoting *Anderson*, 477 U.S. at 255)).

For the most part, Plaintiffs only attempt to establish Defendants' state of mind for the NYSIF amount that All-Ply reported for the 2011/2012 policy. During the audit for this policy, All-Ply claimed that $490,466.72 should be excluded from Liberty Mutual audit, however, Durante reduced this amount in a 2012 letter by approximately $20,000, to $470,902. PSOMF ¶ 82. This $20,000 reduction simply does not conclusively establish as a matter of law that Durante

---

[9] The Court recognizes that there is certainly evidence through which a reasonable juror could infer that Defendants knew that they were providing incorrect information to Liberty. For example, while Defendants argue that they "estimated" officer payroll because tax returns were not available, Durante "estimated" that he made almost twice as much as his actual salary. PSOMF ¶¶ 56-57; *see also* Durante Dep. T156:20-157:7 (stating that Liberty knew he was providing inaccurate information as to employees' job duties based on an "understanding"). This evidence, however, is not enough for the Court to conclude that no genuine issue of material fact exists.

*knew* the amount was incorrect when initially reported. Plaintiffs also argue that Durante knew the NYSIF amount was incorrect because Durante testified that in February 2013, Durante knew that the auditor for All-Ply's New York policy only picked up $100,766. Durante Dep. at T106:21-108:2. Yet, it also appears that Durante wrote his 2012 letter before learning the amount of All-Ply's payroll that was picked up by the New York policy – at least such fact is not clearly demonstrated to Plaintiffs' benefit on the current record. Moreover, All-Ply had asked the New York carrier for a re-audit, (*id.* at T107:21-22). Thus, there is evidence from which a trier of fact can reasonably infer that from Defendants' perspective, that the NYSIF amount was not certain. Based on this evidence, the Court cannot conclude as a matter of law that Defendants knew the NYSIF amounts in the 2011/2012 policy audit were not accurate.

In sum, the Court cannot conclude as a matter of law that Defendants' possessed the required state of mind to establish workers' compensation fraud pursuant to N.J.S.A. 34:15-57.4.

As to the alleged classification scheme, there is also a genuine issue of material fact as to whether certain employees are actually roofers. Namely, Defendants contend that (1) certain employees never performed roofing worker and should not be classified as roofers; and (2) that some employees were classified as roofers by mistake. *See, e.g.*, Defendants' Response to PSOMF ¶¶ 21, 22, 53, 56-59. Summary judgment, therefore, is also denied on these grounds.

### Count Two - The IFPA, N.J.S.A. 17:33A-4

A person violates the IFPA if he "prepares or makes any written or oral statement, intended to be presented to any insurance company . . . for the purpose of obtaining an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract." N.J.S.A. 17:33A-4(a)(4)(b). A person also violates the IFPA if he "conceals or knowingly fails to disclose the occurrence of an event which

affects any person's initial or continued right to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled." N.J.S.A. 17:33A-4(a)(3). Proof of a violation of the IFPA "need only be found to exist based on a preponderance of the evidence." *Allstate Ins. Co. v. Northfield Med. Ctr., P.C.*, 228 N.J. 596, 615 (2017).

The IFPA "sweeps more broadly than common law fraud and explicitly reaches certain omissions." *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 492 (D.N.J. 2018). Unlike common law fraud, "the IFPA does not require proof of reliance on the false statement or resultant damages, nor proof of intent to deceive." *Id.* at 493 (quoting *Lincoln Nat'l Life Ins. Co. v. Schwarz*, No. 09-3361, 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010)). Thus, a plaintiff need only establish (1) knowledge, (2) falsity, and (3) materiality. *Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program*, No. 10-3197, 2015 WL 8345537, at *4 (D.N.J. Dec. 8, 2015).

Plaintiffs argue that summary judgment should be granted for their IFPA claim based on the same misrepresentations addressed for the workers' compensation fraud claim. As discussed, there are material issues of fact as to the alleged fraud regarding employee classification. And for the same reasons as discussed with respect to workers' compensation fraud, there are also genuine issues of material fact as to whether Defendants knew that they were making false statements. As a result, Plaintiffs' motion for summary judgment for their claim for affirmative representations under the IFPA is denied.

With little analysis, Plaintiffs also maintain that Defendants are liable under the IFPA because of Defendants' failure to disclose accurate information to Plaintiffs. Plfs' Br. at 23. While not clear, it appears that Plaintiffs contend that Defendants are liable under subsection (a)(3) of the IFPA. Plaintiffs only argue that Defendants failed to disclose the roofing duties of All-Ply

employees. *Id.* at 20. Again, the Court finds that there is a genuine issue of material fact as to the scope of employees' job duties. Accordingly, Plaintiffs' motion for summary judgment is denied as to their claim for omission under the IFPA.

Finally, Plaintiffs seek treble damages under the IFPA. Plfs' Br. at 23-25. If an insurance company is successful under the IFPA, it "shall recover treble damages if the court determines that the defendant has engaged in a pattern of violating this act." N.J.S.A. 17:33A-7. A pattern exists if there are five or more related violations. Violations "are related if they involve either the same victim, or same or similar actions on the part of the person or practitioner." N.J.S.A. 17:33A-3. Because there are genuine disputes of material fact as to whether violations of the IFPA occurred, Plaintiffs' motion for summary judgment for treble damages is also denied.

Count Three - Common Law Fraud

To prevail on a claim for common law fraud, a plaintiff must prove each of the following: (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). An omission can amount to fraud if a party has a duty to disclose.[10] *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013).

Summary judgment is also denied as to Plaintiffs' common law fraud claim. There are materials issues of fact as to whether Defendants made any misrepresentations or omissions with respect to All-Ply employees' job duties, and there are genuine issues of material fact as to Defendants knowledge vis-a-vis any of the three purported fraud schemes.

---

[10] Because there are material issues of fact as to whether Defendants made the omissions alleged by Plaintiffs (*i.e.* employee job duties), the Court need not address the issue of whether Defendants had a duty to disclose.

**The Counterclaims**

<u>Equitable Estoppel</u>

All-Ply asserts a novel claim for equitable estoppel. In short, All-Ply maintains that for all nine policy periods, Plaintiffs failed to (re)classify All-Ply's employees as roofers for workers' compensation insurance purposes. All-Ply maintains that Plaintiffs' representations regarding classifications (or failure to reclassify All-Ply's employees) in each policy were false and that All-Ply reasonably relied on these misrepresentations because Plaintiffs lack knowledge and expertise regarding workers' compensation coverage. As a result, All-Ply maintains that Plaintiffs should be equitably estopped from reclassifying All-Ply's employees as roofers. All-Ply essentially claims that it relied on Plaintiffs to not catch All-Ply's alleged fraud. Defs' Br. at 8-17. Plaintiffs argue that summary judgment for the equitable estoppel claim should be granted to them on numerous grounds – one of which is because All-Ply fails to establish that it has been damaged by Plaintiffs. Plfs' CC Br. at 11.

Equitable estoppel is a doctrine that "prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment." *Casamasino v. City of Jersey City*, 158 N.J. 333, 354 (1999). To recover on a claim for equitable estoppel, a plaintiff must establish "(i) material misrepresentation, (ii) reasonable reliance upon the misrepresentation, and (iii) damages resulting from the misrepresentation." *Hein v. FDIC*, 88 F.3d 210, 221 (3d Cir. 1996); *Knorr v. Smeal*, 178 N.J. 169, 178 (2003) ("[T]o establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment.").

All-Ply argues that allowing Plaintiffs to "recover the increased premiums they seek from All-Ply would amount to severe prejudice and manifest injustice." Defs' Br. at 17. All-Ply,

however, has yet to pay any of the increased premiums that are now in dispute. PCCSOMF ¶ 35. Therefore, All-Ply appears to argue that it has not been damaged to date, but if Plaintiffs prevail in this matter (*i.e.* proving that All-Ply did defraud Plaintiffs), then All-Ply will be damaged. All-Ply provides no legal authority to support this unusual argument, nor could the Court find any. While All-Ply would certainly be financially harmed by having to pay an increased premium, it would only be responsible for the increased costs because it defrauded Plaintiffs. This is a natural consequence of being found liable for fraud. Moreover, if All-Ply is ultimately found liable for fraud, it cannot then argue that it reasonably relied on Plaintiffs not detecting their fraud. *See, e.g.,* *Varano, Damian & Finkel, L.L.C. v. Allstate Ins. Co.*, 366 N.J. Super. 1, 7 (App. Div. 2004) ("[E]stoppel cannot be interposed to protect an active wrongdoer." (quoting *Gould & Eberhardt v. City of Newark*, 6 N.J. 240, 244 (1951))); *N.J. Auto. Ins. Plan v. Sciarra*, 103 F. Supp. 2d 388, 400 (D.N.J. 1998) ("One who engages in fraud, however, may not urge that one's victim should have been more circumspect or astute." (quoting *Jewish Ctr. of Sussex Cty. v. Whale*, 86 N.J. 619, 626 n.1 (1981))).

All-Ply also maintains that its litigation costs are recoverable damages. Defs' CC Opp. Br. at 7. But All-Ply's claim for attorneys' fees has already been dismissed by Judge Linares. Judge Linares concluded that a "prevailing litigant is ordinarily not entitled to collect a reasonable attorneys fee from the loser." Counterclaim MTD Opinion at 8 (quoting *Guarantee Ins. Co. v. Saltman*, 217 N.J. Super. 604, 609 (App. Div. 1987)). Further, while Judge Linares recognized that there are exceptions to this general rule, he determined that All-Ply failed to establish any exception under which it could receive counsel fees. *Id.* Accordingly, All-Ply cannot recover the attorney's fees and costs incurred in connection with this litigation. Outside of its litigation costs, All-Ply has not identified any damages that it has already incurred. Because All-Ply does not

establish that it has been damaged (or raise a genuine dispute of material fact as to its damages), its claim for equitable estoppel fails. All-Ply's motion for summary judgment for its equitable estoppel claim, therefore, is denied, and Liberty's motion for summary judgment on these grounds is granted.

### Breach of the Implied Covenant of Good Faith and Fair Dealing

All-Ply and Liberty both seek summary judgment for All-Ply's breach of the implied covenant of good faith and fair dealing counterclaim. "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). A party asserting a claim for breach of the implied covenant "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225 (2005). "The contours of that analysis are not altered simply because the contract at issue is a policy of insurance." *Wood v. N.J. Mfrs. Ins. Co.*, 206 N.J. 562, 577 (2011). As the dominant party, however, the insurance party "has an even greater obligation than the insured to act in good faith." *Price v. N.J. Mfrs. Ins. Co.*, 182 N.J. 519, 526 (2005)). The implied covenant of good faith and fair dealing allows "redress for the bad faith performance of an agreement even when the [breaching party] has not breached any express term."[11] *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 257 (App. Div. 2002).

---

[11] A breach of the implied covenant of good faith and fair dealing also allows courts to include "terms and conditions which have not been expressly set forth in the written contract" and "permit[s] inquiry into a party's exercise of discretion expressly granted by a contract's terms." *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 257 (App. Div. 2002).

All-Ply alleges that Plaintiffs failed to act in good faith because they did not realize, through earlier audits, that All-Ply's employees were miscategorized. Defs' CC Br. at 20. All-Ply is essentially again arguing that Plaintiffs are liable because they failed to discover All-Ply's alleged fraudulent scheme. While not clear, All-Ply appears to contend that it has been damaged because it might be responsible for the increased premiums through this litigation and for the litigation costs it has been forced to incur to defend itself. Defs' Br. at 21; Defs' CC Op. Br. at 7. Charitably, these arguments are unusual. But ultimately, All-Ply's breach of the implied covenant claim fails for the same reasons that its equitable estoppel claim fails – All-Ply cannot recover its litigation costs (Counterclaim MTD Opinion at 8), and is not entitled to relief if it is ultimately liable for fraud. *N.J. Auto. Ins. Plan*, 103 F. Supp. 2d at 400. All-Ply cites to no other damages that it has actually suffered due to the alleged breach. Without damages, the claim fails as a matter of law.

Given the fact that All-Ply fails to establish that it was otherwise damaged by Plaintiffs' conduct, summary judgment is denied to All-Ply for the breach of the implied covenant of good faith and fair dealing counterclaim and granted to Plaintiffs.

## V. CONCLUSION

In sum, Plaintiffs' motion for partial summary judgment (D.E. 170) is **DENIED** and their motion for summary judgment to dismiss the remaining counts of the counterclaim (D.E. 171) is **GRANTED**. Defendants' motion for summary judgment (D.E. 172) is **DENIED**. An appropriate Order accompanies this Opinion.

**Date:** January 30, 2019

JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE